FILED

2011 Dec-20  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

JOHN FRANKLIN WARD,            )
                              )
        Plaintiff,            )
                              )
vs.                           )        2:11-cv-00112-LSC
                              )
JOHN SNODDY, et al.,          )
                              )
        Defendants.          )

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a motion to dismiss, which was filed by

Defendants John Snoddy[1] and District Judge Michael Newell (Doc. 13), and a motion

for summary judgment, which was filed by Defendants Anthony Nix and Charles

Baker (Doc. 30).   Plaintiff John Franklin Ward filed this action, *pro se*, against

Defendants, alleging violations of his Fourth, Fifth,[2] and Fourteenth Amendment

---

[1]It appears to the Court that John Snoddy has been improperly named in the heading of the
Complaint as John "Snoody."

[2] "It is well settled that the Due Process Clause of the Fifth Amendment does not bind state
governments.  Rather, it is applicable only to the federal government."  *Love v. Davis*, 14 F. Supp.
2d 1273, 1276 n.1 (N.D. Ala. 1998) (citing *Buxton v. City of Plant City*, 871 F.2d 1037, 1041 (11th Cir.
1989)).  Because none of the alleged defendants in this case is an agent or employee of the United
States of America, all claims made pursuant to the Fifth Amendment will be dismissed.

rights under 42 U.S.C. § 1983 ("§ 1983").[3]  The issues raised in Defendants' motions have been fully briefed by the parties and are ripe for decision.   Upon due consideration and for the reasons stated herein, Defendants' motions will be granted in all respects.[4]

## II.    Background.

Plaintiff John Franklin Ward was adjudicated guilty of misdemeanor driving under the influence ("DUI") in 1994 and issued a fine.  In 2003, the Winston County Circuit Court Clerk's Office issued a "Notice of Suspension" for Plaintiff's driver's license due to non-payment of that fine.  Plaintiff contends the Notice of Suspension was not issued in the correct manner, and he has sought an "indigency determination" from District Court Judge Michael Newell.  Specifically, Plaintiff filed

---

[3]The Complaint actually reads "42 U.S.C. § 1981"; however, the Court assumes this is a typo and Plaintiff intended to write "§ 1983."  Regardless, the facts alleged do not state a claim under § 1981.

[4]The Court notes that Plaintiff, now incarcerated in the Winston County Jail, has filed four separate motions or notices claiming that he is being denied paper, envelopes, and/or stamps by jail officials. (Docs. 42, 44-46.)  In response to the first motion, the Court pointed out that Plaintiff had filed responsive submissions to the dispositive motions in his case, and informed the Plaintiff that it would rule on his request if this action survived Defendants' motions to dismiss and for summary judgment. (Doc. 43.) Plaintiff, nonetheless, continued to file notices that he was being denied paper, envelopes, and stamps— by using paper, envelopes, and stamps.  (During the same time period, Plaintiff also filed a complaint and five other motions, notices, or objections in another civil case: 6:11-cv-03806-VEH-RRA.)  Although Plaintiff broadly asserts that he has motions that require filing in this case, nowhere in the four motions/notices does he identify what he intends to file.  There is no indication that Plaintiff has been denied the ability to fully and completely respond to the motions at issue.

a petition on or around December 7, 2009, with the Winston County District Court seeking to have the 1994 fine reduced due to indigency. Judge Newell denied the petition and noted the court was "without jurisdiction."

Plaintiff subsequently filed a declaratory judgment action with the Winston County Circuit Court, by mail, in August 2010, asking to have Alabama Rule of Criminal Procedure 26.11 declared unconstitutional as it is applied to "indigent persons." Plaintiff alleges he mailed the complaint because he was threatened with arrest by Winston County Circuit Court Clerk John Snoddy if he "said one word to any assistant clerk about their refusal to file pro se documents" he presented. (Compl. ¶ 31.) Plaintiff did not file his declaratory judgment action by certified mail or request a return receipt. The Winston County Circuit Court Clerk's Office denied receiving the filing.

On October 25, 2010, Plaintiff was arrested by Defendant Anthony Nix, a deputy sheriff for Winston County, Alabama, for possession of alcohol, driving a motorcycle without a helmet, and driving with a suspended license. He was processed into the Winston County Jail and placed in a small cell. After "four hours of yelling at the jailers," Defendant Charles Baker, a Corrections Officer, sprayed Plaintiff with chemical spray. (Compl. ¶ 23.) Plaintiff contends that after he was sprayed, he

"managed to stay standing and breathing," and he told Officer Baker "to open the door to the cell, and start this fight." (*Id.* ¶ 24.) Judge Michael Newell set Plaintiff's bond at $6,500. Plaintiff was allowed to sign his own bond and leave the jail with pending criminal charges.

Plaintiff contends that Deputy Nix unlawfully seized and arrested him on "unfounded charges" and used excessive force by discharging a firearm in the course of the arrest. Plaintiff accuses Officer Baker of using excessive force and denying medical attention after spraying Plaintiff with chemical spray. Plaintiff alleges that Clerk Snoddy violated Plaintiff's constitutional rights when he incorrectly issued a Notice of Suspension in 2003 and refused to file Plaintiff's declaratory judgment action in 2010. Plaintiff contends that it was Clerk Snoddy and Judge Newell's failure or refusal to act that directly led to his "illegal arrest" and the use of "excessive force." He accuses all Defendants of acting in concert to deprive him of his constitutional rights by sustaining the unlawful suspension of his driver's license. He maintains that the suspension of his driving privileges prevents him from exercising his religious freedom because he cannot worship with his fellow Native Americans.

III.    Motion to Dismiss.

Clerk Snoddy and Judge Newell move to dismiss Plaintiff's claims in their entirety. They argue that they are entitled to immunity from suit. Clerk Snoddy also contends that any claims related to the issuance of a Notice of Suspension in 2003 are time-barred. The Court agrees.

A.    Standard.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(internal citations omitted).[5] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, *Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And, "where the well-pleaded facts do not permit the court to infer

---

[5]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).   Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).   Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951-52).

However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364 (11th Cir. 1997).   While the Court is required to show leniency to *pro se* litigants, "this leniency does not give a court license to serve as *de facto* counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to

sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

B.     Statute of Limitations.

"A district court may dismiss a § 1983 complaint for failure to state a claim if the action would be barred by the applicable statute of limitations." *Williams v. Alabama*, 425 Fed. Appx. 824, 825 (11th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 214–15 (2007)). "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Id.* (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). "The governing limitations period in Alabama is two years." *Id.* (citing Ala.Code § 6–2–38). Therefore, all claims related to the issuance of a Notice of Suspension in 2003, or even the imposition of Plaintiff's 1994 fine, are barred.

C.     Judge Newell: Judicial Immunity.

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). "This immunity applies

even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id.* (quoting *Stump*, 435 U.S. at 356.) "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). All of Plaintiff's claims against Judge Newell relate to actions taken by the judge while he performed normal judicial functions. Plaintiff does not allege any facts that would show Judge Newell acted "in the clear absence of all jurisdiction." *Bolin*, 225 F.3d at 1239 (quoting *Stump*, 435 U.S. at 356). Accordingly, Plaintiff's § 1983 claims against Judge Newell are due to be dismissed in their entirety.

D.     Clerk Snoddy: Qualified Immunity.

The Court has for consideration Plaintiff's remaining claims that Clerk Snoddy violated his constitutional rights by (1) "threatening" him with arrest if he said anything to the assistant clerks about their refusal to file documents and by (2) failing to file his declaratory judgment action. These actions do not fall within the narrow range of actions for which a clerk of court is due absolute immunity. *See Hyland v.*

*Kolhage*, 267 Fed. Appx. 836 (11th Cir. 2008) (citing *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)[6]).  However, the Court finds that Clerk Snoddy is entitled to qualified immunity from Plaintiff's suit.[7]

"The Supreme Court has recognized that public officials require the protection of qualified immunity from damage suits in order to execute their duties without interference and free from threats of liability, provided that their conduct is not unlawful." *Hudgins v. City of Ashburn, Ga.*, 890 F.2d 396, 402 (11th Cir. 1989).  "If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)).  Plaintiff argues that Clerk

---

[6]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[7]Plaintiff may not sue Clerk Snoddy in his official capacity.  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citations omitted).  "Alabama has not waived its Eleventh Amendment immunity[,] and Congress has not abrogated Alabama's immunity." *Id.* (citations omitted).  Although § 1983 claims for prospective injunctive relief are not considered suits against the state for purposes of Eleventh Amendment immunity, Plaintiff has not requested prospective injunctive relief.  *See Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  Accordingly, Clerk Snoddy, a state official, is immune from § 1983 claims brought against him in his official capacity.

Snoddy was performing "ministerial" tasks during the purported wrongful conduct. In the qualified immunity context, however, the Eleventh Circuit has "abandoned this 'discretionary function/ ministerial task' dichotomy." *Id*. at 1265. Rather, a defendant must only show that the alleged actions were performed in the course of his official duties and within the scope of his authority. *Id*. at 1265-66 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)). Accepting (or choosing not to accept) documents for filing, answering questions about filing, and instructing the public on how to interact with clerk's office employees in conjunction with the filing of documents is clearly within the scope of Clerk Snoddy's authority and official duties. Therefore, in order to overcome qualified immunity, Plaintiff must show: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id*. at 1264 (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

Plaintiff has not alleged sufficient facts to show that Clerk Snoddy violated his clearly established Fourteenth Amendment due process rights. The Complaint reads: "Plaintiff was verbally threatened by Defendant John Snoddy, with arrest if Plaintiff came to the Circuit Clerk's Office, and said one word to any assistant clerk about their refusal to file PRO SE documents presented by Plaintiff." (Compl. ¶ 31.) In an

attempt to amend the complaint, Plaintiff clarified that he argued with the assistant clerks about whether they would file an Affidavit of Substantial Hardship and Clerk Snoddy informed Plaintiff that the Clerk's Office does not file Affidavits of Hardship. (Doc. 20 ¶ 17.) Plaintiff has not identified any legal authority establishing that a threat to call law enforcement if a plaintiff continues to argue with clerk's office employees violates an individual's due process rights, nor is there any such constitutional violation in this case.

Plaintiff also alleges: "The Winston County Circuit Clerk's Office denied receiving the Declaratory Judgment Action." (Compl. ¶ 33.) Plaintiff states that he mailed his declaratory judgment action to the clerk's office, but the exhibit attached to the Complaint shows that he did not mail the document by certified mail or request a return receipt. Plaintiff has not alleged he has knowledge the Clerk's Office received his filing and refused to process it. Denying receipt of a filing does not infringe upon an individual's constitutional due process rights. Because Plaintiff has failed to meet his burden to show that Clerk Snoddy is not entitled to qualified immunity, his § 1983 claims against this defendant will be dismissed.

IV.    Motion for Summary Judgment.

Officer Baker and Deputy Nix have moved for summary judgment on Plaintiff's claims.  They also argue that they are entitled to qualified immunity,[8] and they have submitted affidavits in support of their defense.

Deputy Nix states, under oath, that he was at home on October 25, 2010, when a call came over his police scanner that there were complaints of a possible drunken motorcyclist with no helmet driving on Winston County Road 107.  When Deputy Nix got into his patrol cruiser to respond to the call, Plaintiff passed by.  Deputy Nix pulled Plaintiff over.  (Nix Aff. ¶¶ 5-10.)  Plaintiff contends that while he was being pulled over, he "hears a loud explosion, similar to the sound of a weapon discharging."  (Compl. ¶ 13.)  He later swears that "Nix fired a weapon at me, John F. Ward when attempting to stop me."  (Ward Aff. ¶ z.)  Deputy Nix maintains that there was a firearm in the passenger side seat of his cruiser but he never discharged, held, or touched it during the pursuit.  (Nix. Aff. ¶ 9-10.)  Deputy Nix testified that Plaintiff smelled of alcohol and his speech was slurred.  When he asked Plaintiff if he had been drinking, Plaintiff said, "yes," and Plaintiff admitted to having alcohol on the motorcycle.  Deputy Nix states that Plaintiff was cooperative, other than "a few

---

[8]For the reasons stated above, *supra* n. 8, Plaintiff may not sue Officer Baker and Deputy Nix in their official capacities.  Deputy sheriffs and jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.  *See Lancaster*, 116 F.3d at 1429-30.

verbal retorts," and he was placed under arrest for possession of alcohol, driving without a helmet, and driving with a suspended license. Deputy Nix testifies that he did not arrest Plaintiff for DUI because it was his day off and he would have spent the remainder of his day processing him on the charge; he was more concerned with getting Plaintiff off the road.

Officer Baker was on duty at the Winston County Jail when Plaintiff was brought in after his arrest. Officer Baker states, under oath, that Plaintiff smelled of alcohol, slurred his words, and acted belligerent—yelling and demanding to know his charges. (Baker Aff. ¶¶ 4-5.) Officer Baker says that he feared Plaintiff would become violent, so for the officers' and Plaintiff's safety, he put him in a security cell until Deputy Nix arrived to fill out the traffic citations. A mattress and blanket were placed in the cell. According to Officer Baker, Plaintiff repeatedly screamed for a jailer. He screamed that he "was Native American and wanted to practice his religion . . . that he needed to be taken to an Indian Reservation to worship." He also yelled that he wanted to be released. (*Id*. ¶ 10.) Officer Baker testifies that Plaintiff continued to act out after he was booked. Plaintiff urinated on the floor of the cell and began throwing items into the hall, tearing out pieces of the mattress. Plaintiff began screaming at the other inmates and arguing with them. Officer Baker states that he ordered Plaintiff to

stop yelling and warned him that he would use chemical spray if he did not stop. Because Plaintiff refused to stop screaming and acting out, Officer Baker sprayed Plaintiff with chemical spray from about four to five feet away in order "to maintain control of the jail." (*Id.* ¶¶ 12-18.) Officer Baker says that he sprayed Plaintiff in the neck and the spray was a mixture of "freeze, pepper tear gas, and pepper." (*Id.* ¶¶ 19-20.) Plaintiff contends he was sprayed in the face. It is undisputed that after he was sprayed, Plaintiff continued standing and challenged Officer Baker to open the door so he could beat him up. When Officer Baker would not open the door, Plaintiff challenged him to spray him again. (*Id.* ¶ 21.) Officer Baker testifies that Plaintiff exhibited no signs of irritation and did not complain about the spray or ask for it to be washed away. Plaintiff never requested medical attention and Officer Baker did not observe any conditions that would require medical attention. Instead, Plaintiff fell asleep after scooting into the mattress cover, which he was able to do because he had pulled out so much stuffing. Officer Baker states that Plaintiff appeared to sleep soundly for the remainder of his shift. (*Id.* ¶¶ 25-29.)

A.    Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).[9]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. &*

---

[9]Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

*Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

B.     Arrest.

Plaintiff contends that Deputy Nix subjected him to an unlawful search and seizure and used excessive force in the course of his arrest, in violation of his Fourth Amendment rights.  When issues of qualified immunity are raised in cases like this,[10] "courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.'" *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201).

"Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003)).  However, even if an arrest is made without probable cause, an

---

[10]In this case, it is undisputed that Deputy Nix was acting within the scope of his discretionary authority when he stopped and arrested Plaintiff.

officer is "entitled to qualified immunity if there was arguable probable cause for the arrest." *Id.* (quoting *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999)). "Accordingly, we must inquire whether 'reasonable officers in the same circumstances and possessing the same knowledge as [Deputy Nix] could have believed that probable cause existed to arrest Plaintiff . . . .'" *Id.* (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). Plaintiff "must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances." *Id.* (citing *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003)).

In support of his charge of unlawful arrest, Plaintiff argues only that he "had no illegal alcohol." (Pl. Aff. ¶ 2; Doc. 37 at 2.) Plaintiff has not presented any admissible evidence to dispute Deputy Nix's testimony that he received reports of a possible drunken motorcyclist with no helmet, Plaintiff was driving his motorcycle without a helmet or a valid driver's license, and Plaintiff smelled of alcohol and was slurring his words. Plaintiff does not even deny that he told Deputy Nix that he had alcohol and had been drinking. There is no question that a reasonable officer could have believed that Plaintiff violated the law by driving his motorcycle under the influence of alcohol. The fact that Deputy Nix did not cite Plaintiff for DUI is irrelevent. "The validity of

an arrest does not turn on the offense announced by the officer at the time of the arrest." Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (quoting *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) (holding that arrest was proper based on bribery, unlawful compensation, and unlawful possession of money in jail even though arrest report reflected only conveying tools into jail to aid escape, for which defendant was not charged)).  Indeed, "[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Id.* at 1196 ( quoting *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973)).  Plaintiff's arrest was lawful and Deputy Nix is entitled to qualified immunity on the Fourth Amendment search and seizure claim.

The Court also finds that Deputy Nix is entitled to qualified immunity with regard to Plaintiff's claim that Nix used excessive force by firing a gun at him during the course of his traffic stop and detention.  Plaintiff has not introduced or described the existence of any admissible evidence establishing that Deputy Nix used a firearm. In the Complaint, Plaintiff says he heard a "loud explosion, *similar to the sound of* a weapon discharging."  (Compl. ¶ 13 (emphasis added).)  In his affidavit, Plaintiff

swears that Deputy Nix "fired a weapon at me," (Pl. Aff. ¶ z), but it is evident to the Court that Plaintiff has no personal knowledge that Deputy Nix used a firearm. He bases his accusation solely on a loud sound he heard while driving his motorcycle. He maintains that there are eyewitnesses, but none that saw Nix fire a gun—only witnesses who allegedly "heard the shot." (Doc. 37 at 4.) Although these purported eyewitnesses are neighbors and family known to the plaintiff, he has not submitted any statements to the Court from these individuals. Deputy Nix has sworn he never touched his weapon in the course of Plaintiff's traffic stop and arrest. Because Plaintiff has failed to establish a genuine dispute of fact on this issue, summary judgment will be entered.

C.     Use of Chemical Spray.

Plaintiff also contends that Officer Baker is liable for the use of excessive force while Plaintiff was in custody. The core inquiry in evaluating this type of claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[11] *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992) . The U.S. Supreme Court has reasoned:

---

[11] It is undisputed that Officer Baker was acting within the scope of his discretionary authority when he interacted with Plaintiff during his shift at the Winston County Jail on October 25, 2010.

> Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Id.* at 6 (internal citations omitted).  With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used by prison or jail officials is excessive.  These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate.  *Id.* at 7.

In the case at hand, Plaintiff admits to "four [] hours of yelling at the jailers" and being "rather verbal and angry."  (Compl. ¶¶ 20, 23.)  Officer Baker testified that Plaintiff refused to stop yelling at jail staff and other inmates, despite being counseled to do so, and other inmates were being angered to the extent Officer Baker feared a riot.  Moreover, there is no evidence Plaintiff suffered any injury.  Plaintiff writes that

he "managed to stay standing, and breathing," and he challenged Officer Baker to fight him. (*Id.* ¶ 24.)  Plaintiff contends that he later "went into shock," but doesn't describe any such symptoms, pain, or inability to breathe, and there is no dispute that despite Plaintiff's previous ability to be quite vocal, he never complained to jail staff of any pain or illness.  According to Officer Baker, Plaintiff exhibited no signs of injury or irritation, and he went to sleep.  Plaintiff has not proffered any admissible evidence that would lead a reasonable jury to conclude the force used by Officer Baker rises to the level of a constitutional violation.   Accordingly, Officer Baker is entitled to qualified immunity and summary judgment will be granted.

D.     Denial of Care.

Finally, Plaintiff contends that Officer Baker is liable for deliberate indifference because he refused or failed to give medical attention "when Plaintiff went into shock after being chemically sprayed."  (Compl. at 6 ¶ F.)  "[D]elay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1186-87 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).  In order to establish a claim for deliberate indifference, Plaintiff must show he had an objectively serious medical need.  "A serious medical need is one that

has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quotation omitted). "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Id.* (citation omitted).  Plaintiff has not met this burden.  As noted above, Plaintiff did not exhibit any signs or symptoms that he needed medical care.  He did not request medical care.  And, there is no evidence that Plaintiff suffered any harm from denial of medical care.  Officer Baker is also entitled to qualified immunity on this claim, and summary judgment will be entered in his favor.

V.     Conspiracy Claims.

        To the extent Plaintiff attempts to make conspiracy claims against the defendants, those claims will be dismissed.  "[T]o sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of [his] constitutional rights." *Hadley v. Gutierrez*, 526 F.3d 1324, (11th Cir. 2008) (quoting *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998)).  As outlined above, Plaintiff has failed to show the denial of any constitutional right.

VI.    State Law Claims.

On April 7, 2011, Plaintiff filed an amended complaint without requesting leave of the Court. (Doc. 20.) The Court struck the pleading for failure to follow Federal Rule of Civil Procedure 15(a). (Doc. 23.) Plaintiff has objected to the Court's action, arguing that his pleadings should be broadly construed and the Court should have treated his amendment as a motion for leave to file.[12] (Doc. 25.) Nothing in the proposed amended complaint changes the Court's opinion on the federal claims discussed above. Plaintiff did seek to add state law claims against the defendants for negligence, wantonness, and conspiracy. However, a district court may decline to exercise jurisdiction over state law causes of action if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Even if the Court had allowed the filing of Plaintiff's proposed amended complaint, the additional state law claims would be dismissed. Because this Court has concluded that Plaintiff's § 1983 claims

---

[12]On December 9, 2011, nearly eleventh months after instituting this litigation and eight months after his first attempt to amend the complaint, Plaintiff filed a motion for leave to amend the complaint. (Doc. 47.) At this point, dispositive motions had been briefed and pending for nearly five months. Plaintiff does not identify the specific changes he wishes to make to the Complaint or substantively explain how those changes would advance his claims. Accordingly, Plaintiff's motion to amend is DENIED.

must be dismissed, the Court would decline to exercise jurisdiction over the associated state law claims.

VII.   Conclusion.

For the reasons outlined above, the motion to dismiss filed by Clerk Snoddy and Judge Michael Newell, and the motion for summary judgment filed by Deputy Nix and Officer Baker will be granted in all respects.  A separate order will be entered.

Done this 20th day of December 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297